UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Anchor Wall Systems, Inc.,

                Plaintiff,

vs.

Rockwood Retaining Walls,
Inc., GLS Industries, Inc.,
Equipment, Inc., Rochester
Concrete Products, LLC,
Raymond R. Price, Gerald P.
Price, Brian A. Price, and
Christopher E. Price,

                Defendants, and
                Counterclaim Plaintiffs,

vs.

Anchor Wall Systems, Inc.,
Douglas A. Strawbridge
and Glenn C. Bolles,

                Counterclaim
                Defendants.        Civ. No. 06-4666 (PJS/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of the Plaintiff Anchor Wall Systems, Inc., and the Counterclaim Defendants, Anchor Wall Systems, Inc., Douglas A. Strawbridge, and Glenn C. Bolles (collectively, "Anchor"), to Dismiss the Counterclaim of the Defendants, and Counter Claim Plaintiffs, Rockwood Retaining Walls, Inc., GLS Industries, Inc., Equipment, Inc., Rochester Concrete Products, LLC, Raymond R. Price, Gerald P. Price, Brian A. Price, and Christopher E. Price (collectively, "Rockwood"), that asserts antitrust violations.[1]

A Hearing on the Motion was conducted on June 19, 2007, at which time, Anchor appeared by Thomas F. Pursell, and Dennis C. Bremer, Esqs., and Rockwood

---

[1]In passing, we note that the Plaintiff has also filed a Motion for an extension of time in which to serve the initially named Defendants Rockwood West Co. ("RWC"), and Rockwood South Co. ("RSC."), as well as to Amend the Complaint to name Chris Price ("Price"), as an individual Defendant. See, Docket No. 25. However, the District Court granted the Plaintiff's Motion to Dismiss RWC, RSC, and Price, without prejudice, see, Docket No. 35, we adopted the parties' stipulation to file a Second Amended Complaint, see, Order, Docket No. 36, and Price has filed an Answer to the Second Amended Complaint, see, Answer to Complaint and Counterclaims, Docket No. 39. Accordingly, we recommend that the Plaintiff's Motion be denied, as moot.

appeared by Scott G. Ulbrich, and Chad J. Wickman, Esqs.[2]  For reasons which follow, we recommend that Anchor's Motion be denied.

## II. Factual and Procedural History

In this action, Anchor contends that Rockwood infringes a number of its patents.  On April 3, 2007, Rockwood filed an Answer, and additionally, asserted an Antitrust Counterclaim against Anchor.  See, Docket No. 4, at ¶¶104-117.  Thereafter, on April 23, 2007, Anchor filed a Motion to Dismiss the Antitrust Counterclaim.  See, Docket No. 11.  However, prior to resolution of that Motion, the Court adopted the parties' Stipulation, which allowed Anchor to file an amended, and streamlined, Complaint, see, Docket No. 36, and thereafter, Anchor filed a Second Amended Complaint.  See, Docket No. 37.  On May 24, 2007, Rockwood filed an Answer to Anchor's Second Amended Complaint, and reasserted its Antitrust Counterclaim, albeit with several changes in response to Anchor's initial Motion to Dismiss.  See, Answer to Second Amended Complaint and Counterclaims, Docket No. 39.

---

[2]Each party has provided supplemental briefing, as to the impact of the decision in The America Channel, LLC v. Time Warner Cable, Inc., 2007 WL 1892227 (D. Minn., June 28, 2007), and has offered to provide additional oral argument.  Deeming further oral argument unnecessary, we take the matter under advisement on the parties' respective submissions, oral and written.

Rockwood's Counterclaim asserts that Anchor "sought to enforce and/or threatened to enforce the '015, '713, and '197 patents against [Rockwood's] products with the specific intent to monopolize and restrain trade in the relevant market for such products." See, Answer and Counterclaims, at pp. 12, 23-24, ¶¶10-11, 78.  In this respect, the Counterclaim expressly defines the relevant product, and geographic markets, as being "segmental retaining wall ("SRW") blocks," and "the United States," respectively, for purposes of the antitrust claim.  Id. at p. 23, ¶¶80-81. Rockwood contends that Anchor, "through its **branded and non-branded licensees**, has the largest or one of the largest shares of the SRW market in the United States," and that the "SRW block market for products covered by its '015, '713, and '197 patents is 'at least 50% and probably 80%' of the retail portion of the national market," including "approximately 80% of the Detroit area retail market, 77% of the Chicago area market, and 56% of the Minneapolis area retail market." Id. at pp. 23-24, ¶¶82-84 [emphasis added].

Rockwood further alleges that, "within the relevant product and geographic markets, there are several competitors offering substitute products to Anchor's licensed products, including products offered under the Keystone, Allan Block, Versalock, and Rockwood brand names," and "such SRW blocks are all reasonably

substitutable in use and exhibit a high cross-elasticity of demand with each other." Id. at ¶84.  Rockwood contends that Anchor has "filed multiple lawsuits against alleged infringers of the '015, '713, and '197 patents," and "will continue to purposefully use [their] '015, '713 and '197 patents to extract royalties from or eliminate competitors from the SRW market, thereby increasing its share of the SRW market, decreasing competition and increasing the cost of reasonably substitutable SRW products," and that "Anchor's unlawful use of fraudulently procured patents to suppress and eliminate competition in the SRW market in the United States presents a dangerous probability that [the Counterclaim Defendants] will success in monopolizing and/or restraining trade in the SRW market."  Id. at ¶¶86-87. Rockwood further alleges that it has been damaged because Anchor's actions have violated Section 2 of the Sherman Act, see, Title 15 U.S.C. §2, and it also assert a "Walker Process" antitrust claim, under Walker Process Equipment, Inc. v. Food Machinery& Chemical Corp., 382 U.S. 172, 174 (1965). Id., at ¶¶24-25, ¶¶88-89.

In their Motion to Dismiss, Anchor contends that the Antitrust Counterclaim, as realleged, remains deficient, since it does not adequately plead the necessary elements to assert an antitrust violation.  In turn, Anchor maintains that its Amended

Counterclaim meets all necessary requirements.  We address each asserted deficiency, in turn.

### III.  Discussion

A.  Standard of Review.  "In ruling on a motion to dismiss a complaint for failure to state a claim on which relief can be granted, a court must accept the complaint's factual allegations as true and construe them in a light most favorable to the plaintiff."  Doe v. Cassel, 403 F.3d 986, 987 (8th Cir. 2005), citing Midwestern Mach., Inc. v. Northwest Airlines, Inc., 167 F.3d 439, 441 (8th Cir. 1999); see also, Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004). "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief." Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001), citing Breedlove v. Earthgrains Baking Companies, Inc., 140 F.3d 797, 799 (8th Cir. 1998); see also, Maki v. Allete, supra at 742; Helleloid v. Independent School Dist. No. 361, 149 F. Supp.2d 863, 866-67 (D. Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles,

supra at 627, citing <u>Neitzke v. Williams</u>, 490 U.S. 319, 326-27 (1989).  "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions."  <u>Id.</u>, citing <u>Springdale Educ. Ass'n v. Springdale Sch. Dist.</u>, supra at 651.

A Motion to Dismiss can be converted to a Rule 56 Motion for Summary Judgment if "matters outside the pleadings are presented to and not excluded by the court."  <u>Rule 12(b), Federal Rules of Civil Procedure</u>.  However, a Court may consider some information, which is not contained within the Complaint -- such as materials that are part of the public record, materials that are necessarily embraced by the pleadings, and documents attached to the Complaint as exhibits -- without transforming the Motion into one for Summary Judgment.  See, <u>Quinn v. Ocwen Federal Bank FSB</u>, 470 F.3d 1240, 1244 (8th Cir. 2006), citing <u>Rule 10(c), Federal Rules of Civil Procedure</u> ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); see also, <u>Surgical Synergies, Inc. v. Genessee Associates, Inc.</u>, 432 F.3d 870, 873, n. 3 (8th Cir. 2005), citing <u>Porous Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir. 1999); <u>Enervations, Inc. v. Minnesota Mining and Manufacturing Co.</u>, 380 F.3d 1066, 1069 (8th Cir. 2004); <u>Mattes v. ABC Plastics</u>, 323 F.3d 695, 697 n. 4 (8th Cir. 2003).

Since our recommendation, as to Anchor's Motion, rests entirely upon the pleadings, materials within the public record, and materials that are necessarily embraced by the pleadings, we analyze that Motion under the framework of Rule 12(b)(6), rather than under the regimen of Rule 56.

B.    Legal Analysis.  As an initial matter, our analysis of Anchor's Motion necessarily implicates the Supreme Court's recent decision in Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S. Ct. 1955 (2007), where the Court noted that an antitrust claimant's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do," and that "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  Id. at 1964-65, citing Papasan v. Allain, 478 U.S. 265, 286 (1986).

There, a party alleged a conspiracy, under  Section 1 of the Sherman Act, but failed to support its allegations with any asserted factual basis and, on a "fair reading these [allegations] are merely legal conclusions resting on the prior allegations."  Id. at 1970.  The Supreme Court further noted that, in addressing a Motion to Dismiss pursuant to Rule 12(b)(6), the examining Court "do[es] not require heightened fact

pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face," and that, if "the plaintiffs * * * have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." <u>Id.</u> at 1974. With the precepts of <u>Bell Atlantic</u> in mind, we turn to address Rockwood's Antitrust Counterclaim.

As we have noted, Rockwood has asserted a "Walker Process" antitrust claim. Recently, the Court of Appeals for the Federal Circuit observed that, "[i]n <u>Walker Process</u>, the Supreme Court 'concluded that the enforcement of a patent procured by fraud on the Patent Office may be violative of §2 of the Sherman Act provided the other elements necessary to a §2 case are present.'" <u>Hydril Co. LP v. Grant Prideco LP</u>, 474 F.3d 1344, 1349 (Fed. Cir. 2007), citing <u>Walker Process Equipment, Inc. v. Food Machinery& Chemical Corp.</u>, supra at 174. "<u>Walker Process</u> fraud is a variant of common law fraud." <u>Id.</u>, citing <u>Unitherm Food Sys. Inc., v. Swift-Eckrich, Inc.</u>, 375 F.3d 1341, 1358 (Fed. Cir. 2004) (citations omitted), rev'd on other grounds, 546 U.S. 394 (2006); see, <u>Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. DE C.V.</u>, 384 F. Supp.2d 1334, 1348 (S.D. Iowa 2005), aff'd, 464 F.3d 1339 (8th Cir. 2006).

For the purposes of this Motion, Anchor does not argue that any of the "fraudulently obtained patent" allegations, as they are asserted in the Counterclaim, are insufficiently pled as to the <u>Walker Process</u> claim, but only argues that dismissal is proper because of the Counterclaim's failure to satisfy the pleading requirements of Section 2 of the Sherman Act.

Anchor acknowledges that Rockwood has alleged a national geographic market; that the relevant product market is "SRW block;" and that the blocks covered by certain of Anchor's patents encompass "up to 80% of the 'retail portion of the national market.'" <u>Anchor's Memorandum</u>, <u>Docket No. 41</u>, at p. 4, citing <u>Amended Counterclaim</u>, at ¶¶80, 82.   However, Anchor argues that the Counterclaim fails to identify Anchor's role in the market, and does not address any obvious substitutes. Further, Anchor contends that the alleged geographic market is not defined "in terms of the commercial realities facing consumers," and that, combined with the failure to provide a viable market definition, renders the "dangerous probability of success" allegation deficient.   Lastly, Anchor asserts that Rockwood has failed to properly allege antitrust injury, or damages, so as to have standing to assert an antitrust claim.

As an initial matter, our Court of Appeals has observed that "[t]he liberal rules of pleading embodied in Fed.R.Civ.P. 8 are as applicable to claims in antitrust or price

discrimination cases as they are in any other case," and "[a]ll that is required is a short,

plain statement of facts sufficient to give the defendant fair notice of the basis of the

claim." <u>Baxley-DeLamar Monuments, Inc. v. American Cemetery Ass'n</u>, 843 F.2d

1154, 1156 (8th Cir. 1988) citing <u>Fusco v. Xerox Corp.</u>, 676 F.2d at 337 n. 7 (citations

omitted); see also, <u>UltiMed, Inc. v. Becton, Dickinson and Co.</u>, 2007 WL 128834 at

*1 (D. Minn., January 12, 2007)("A complaint is sufficient if the plaintiff submits

more than mere legal conclusions -- that is, if the plaintiff asserts the essential

elements of an antitrust claim and how the alleged scheme operates or how defendant

violated antitrust regulations."), citing <u>Tele Atlas N.V. v. Navteq Corp.</u>, 397 F. Supp.

2d 1184, 1190 (N.D. Cal .2005), <u>Twombly v. Bell Atl. Corp.</u>, 425 F.3d 99, 110-11 (2nd

Cir. 2005), rev'd, --- U.S. ---, 127 S. Ct. 1955 (2007), and <u>In re Milk Prods. Antitrust

Litig.</u>, 84 F. Supp.2d 1016, 1020 (D. Minn. 1997).

 Furthermore, as our Court of Appeals has explained:

> [C]ourts are hesitant to dismiss antitrust actions before the
> parties have had an opportunity for discovery, because the
> proof of illegal conduct lies largely in the hands of the
> alleged antitrust conspirators. <u>Huelsman v. Civic Ctr. Corp.</u>,
> 873 F.2d 1171, 1174 (8th Cir.1989).  A dismissal on the
> pleadings should be "'granted sparingly and with caution.'
> " <u>Id.</u> (quoting 5 Charles Alan Wright & Arthur R. Miller,
> Federal Practice and Procedure § 1349 (1969)). Most often,
> "proper market definition can be determined only after a

factual inquiry into the commercial realities faced by consumers." Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 436 (3d Cir.1997), cert. denied, 523 U.S. 1059, 118 S.Ct. 1385, 140 L.Ed.2d 645 (1998). This general rule, however, does not amount to "a per se prohibition against dismissal of antitrust claims for failure to plead a relevant market under Fed.R.Civ.P. 12(b)(6)." Id.

Double D Spotting Service, Inc. v. Supervalu, Inc., 136 F.3d 554, 560 (8th Cir. 1998).

Our Court of Appeals has also addressed the requirements for pleading an antitrust claim in the following terms:

> "Antitrust claims often rise or fall on the definition of the relevant market." Bathke v. Casey's Gen. Stores, Inc., 64 F.3d 340, 345 (8th Cir. 1995). "The definition of the relevant market has two components-a product market and a geographic market." Id. The relevant product market includes all reasonably interchangeable products. See Queen City Pizza, 124 F.3d at 436. The geographic market is defined by considering the commercial realities faced by consumers. Bathke, 64 F.3d at 345. It includes the geographic area in which consumers can practically seek alternative sources of the product, and it can be defined as "the market area in which the seller operates." Tampa Elec. Co. v. Nashville Coal Co., 365 U.S. 320, 327, 81 S.Ct. 623, 628, 5 L.Ed.2d 580 (1961); see Bathke, 64 F.3d at 345.

Id.

Our analysis begins with the observation that none of the parties have thoroughly addressed whether the market power, that is held by a patentee's licensees -- where the patentee neither sells, nor makes, the relevant product -- can be attributed to the

patentee.  Rockwood alleges that the relevant market product involves SRW blocks, and that Anchor's **licensees** possess one of the largest shares of the SRW market in the United States, and that the national market share is somewhere between 50-80%. See, Counterclaim, at ¶¶80, 82.  Anchor urges that the pleadings merely demonstrate that Anchor is a **licensor**, who neither manufactures, nor sells, the SRW blocks, and therefore, that Anchor has no ability to wield market power.  See, Rockwood's Reply Memorandum, Docket No. 41, at p. 5.

In the absence of any citation to precedent, we first address whether we can attribute the market share of Anchor's licensees to Anchor.  At least one Federal District Court has held, in the context of pleading a Walker Process claim, that the allegation, itself, is sufficient to overcome a Motion to Dismiss.  In AG Fur Industrielle Elektronik AGIE v. Sodick Co., Ltd., 748 F. Supp. 1305, 1318 (N.D. Ill. 1990), a party alleged that, "[u]pon information and belief, AGIE and its licensees under the '819 patent control more than 75% of the United States market for the sale of CNC wire EDM machines."  Id.  In response, AGIE argued that its licensee's share of the market should not be attributed to it and, in the absence of that attribution, it would only possess approximately 10% of the market share.  There, the Court found that "[n]either of those steps enables AGIE to prevail at the very threshold of Sodick's

antitrust claim," and "[w]hatever conclusion could ultimately be drawn from those factors if they were to be established, they would all go to the merits of the extent of AGIE's market power, not to the sufficiency of AGIE's allegations of such power," and "[c]onsideration of such factors is therefore premature." Id. at 1319.  However, the Court never definitively decided whether the licensee's share should be ascribed to the patentee.

More recently, another Federal District Court found that the market power of a licensee, at least in the context of a "patent misuse" claim, should not be attributed to the patentee -- at least, in the context of a Trial.  See, Minebea Co., Ltd. v. Papst, 444 F. Supp.2d 68, 216 (D.D.C. 2006)("Papst cannot have market power in the market for hard disk drives or the market for motors because Papst does not make or sell either hard disk drives or motors; it simply licenses patents.").  There, however, the Court also inquired into the "anticompetitive effect" of Papst's licensing activities, and made a determination premised on expert testimony.  Id. at 219.  As a consequence, it is remains unresolved whether we should impute the market share of Anchor's licensees when determining whether Anchor holds sufficient market power in the relevant product market, because of its employment of licensing programs.

Since we are required to construe the disputed facts in a light most favorable to the non-moving party, and given the absence of any definitive showing as to the attribution in question, we find that Rockwood has sufficiently alleged, at this early stage of the proceedings, that Anchor has the ability, through its licensing programs, to wield market power. Although it is unclear, from the pleadings, how exactly a licensor may exert control over the market exclusively through its licensees, we conclude that Rockwood has sufficiently pled a threshold claim of market power which arises from the licensee's market share. Whether such power, in fact exists, is not for us to determine at this juncture, for we only find that Anchor has been placed on notice as to the substance of Rockwood's claim of attribution.

While Anchor contends that the Counterclaim ignores potentially substitutable products, and too narrowly focuses upon SRWs – instead of the other, alternative retaining wall materials, such as concrete block, boulders, and bricks, as the relevant product market -- at the pleading stage, "it is sufficient that plaintiff has alleged specific facts that support a narrow product market in a way that is plausible and bears a rational relation to the methodology courts prescribe to define a market for antitrust purposes." Foam Supplies, Inc. v. The Dow Chemical Co., 2006 WL 2225392, at *4

(E.D. Mo., August 2, 2006), quoting Todd v. Exxon Corp., 275 F.3d 191, 203 (2nd Cir. 2001).

Here, Rockwood alleges that there are "several competitors offering substitute products to Anchor's licensed products, including products offered under the Keystone, Allan Block, Versalock and Rockwood brand names," and that "such SRW blocks are all reasonably substitutable in use and exhibit a high cross-elasticity of demand with each other." Counterclaim, at ¶84. Accordingly, Rockwood has alleged a product that it believes to be reasonably substitutable, and can demonstrate cross-elasticity of demand, in sufficient detail, such that a reasonable fact-finder could, at this stage, find that the relevant product market is SRWs. Accordingly, we recommend that Anchor's Motion to Dismiss, premised on insufficient market power, be denied.

As for the "relevant geographic market," Rockwood has alleged a national market, and has pled that Anchor possesses market power in the Minneapolis, Detroit, and Chicago metropolitan areas, and has provided quantifiable numbers for those regions. Since we cannot competently question the accuracy of those assertions at this stage of the pleadings -- even if we concluded, which we do not at this juncture, that those three Midwestern metropolitan areas comprise a "national market" -- we

find that Rockwood has sufficiently pled a relevant geographic market, in that is has

alleged a broad national market, with specific examples undergirding its claim.  See,

Double D Spotting Service, Inc. v. Supervalu, Inc., supra at 560 ("It includes the

geographic area in which consumers can practically seek alternative sources of the

product, and it can be defined as 'the market area in which the seller operates.'"),

citing Tampa Elec. Co. v. Nashville Coal Co., 365 U.S. 320, 327 (1961); and Bathke

v. Casey's Gen. Stores, Inc, supra at 345.

    While the geographic market may need to be revised or amended, in the wake

of further discovery, the Counterclaim has been pled with sufficient specificity to

provide Anchor with sufficient notice to defend against the claim and, given our

finding that Rockwood has pled a relevant product and geographic market, we

similarly find that the claim sufficiently alleges a "dangerous probability of

monopolization," such that the claim survives Anchor's Motion to Dismiss.  See,

Minnesota Mining and Mfg. Co. v. Appleton Papers, Inc.,  35 F. Supp. 2d 1138, 1146

(D. Minn. 1999)("[T]he Supreme Court has stated that 'to determine whether there is

a dangerous probability of monopolization, courts have found it necessary to consider

the relevant market and the defendant's ability to lessen or destroy competition in that

market.'" and "[p]roof of 'market power' in a monopolization claim and proof of

'dangerous probability of success' in an attempt claim attempt are 'of the same character.'"), quoting <u>Spectrum Sports, Inc. v. McQuillan</u>, 506 U.S. 447, 456 (1993), and citing <u>McGahee v. Northern Propane Gas Co.</u>, 858 F.2d 1487, 1505 (11th Cir. 1988), cert. denied 490 U.S. 1084 (1989).

Lastly, Anchor argues that the Antitrust Counterclaim fails to properly allege an antitrust injury, or damages, since it fails to explain "either the type of injury or the casual link between Anchor Wall's alleged actions and the alleged injury and is therefore deficient on its face." See, <u>Anchor's Reply Memorandum</u>, at pp. 9-10. The Antitrust Counterclaim, on its face, alleges that "Anchor has filed multiple lawsuits against alleged infringers of the '015, '713, and '197 patents, including the present suit * * * [and,] seek[s] to enjoin the alleged infringers from selling certain SRW products," and that the "[Rockwood has] been damaged by Anchor's [] acts." <u>Counterclaim</u>, at ¶¶85 and 89.

As for the treble damages claim, Anchor maintains that Rockwood is unable to collect trebles damages, pursuant to Section 4 of the Clayton act, since it has not pled, with any specificity, how it has been injured by Anchor's alleged antitrust violations. Given that Rockwood is a **competitor** of Anchor, and not a direct, or indirect, purchaser of Anchor's goods, Anchor's argument finds some support. See, <u>The</u>

America Channel, LLC v. Time Warner Cable, Inc., 2007 WL 142173 at *4 (D. Minn., January 17, 2007)("Despite the broad language of §4, the United States Supreme Court has held that §4 does not 'allow every person tangentially affected by an antitrust violation to maintain an action to recover threefold damages for the injury to his business or property.'"), quoting Blue Shield of Virginia v. McCready, 457 U.S. 465, 477 (1982); see also, Blue Cross and Blue Shield of Minn. v. GlaxoSmithKline PLC, 2006 WL 516784, at *2 (D. Minn., January 30, 2006)("The Supreme Court has held that only the 'direct purchaser' from a monopoly supplier may recover damages under §4 of the Clayton Act."), citing Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977) and Campos v. Ticketmaster Corp., 140 F.3d 1166, 1169 (8th Cir. 1998), cert. denied 525 U.S. 1102 (1999).

However, the Supreme Court, in Walker Process, and Federal Courts in other decisions, have allowed parties to assert treble damages when pleading a Walker Process claim, pursuant to Section 4 of the Clayton Act.  See, Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 345 n. 41 (1971)("In Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965), the defendant in an infringement action was permitted to counterclaim for treble damages under §4 of the Clayton Act

- 19 -

by asserting that the patent was invalid because procured or enforced with knowledge of fraud practiced on the Patent Office, 'provided the other elements necessary to a (monopolization case under s 2 of the Sherman Act) are present.'"); Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc. supra at 1357; Litton Indus. Products, Inc. v. Solid State Systems Corp., 755 F.2d 158, 166 (Fed. Cir. 1985)("Where the above conditions are proven treble damages under Section 4 of the Clayton Act are recoverable from the patentee or an assignee who maintains and enforces the patent, knowing of its infirmity."); Kearney & Trecker Corp. v. Cincinnati Milacron Inc., 562 F.2d 365, 372-73 (6th Cir. 1977)("Walker Process permits recovery of treble damages under Section 4 of the Clayton Act by a party who can show injury to its business or property resulting from the fraudulent procurement of a patent coupled with violations of Section 2 of the Sherman Act."); Molecular Diagnostics Laboratories v. Hoffmann-La Roche Inc., 402 F. Supp.2d 276, 280 (D.D.C. 2005).

Moreover, as to the threshold issue of whether Rockwood, as a competitor, has standing to allege an antitrust injury, a number of decisions have held that, in the context of Walker Process claims, competitors have such standing, when they are named in a patent infringement suit.  See, e.g., Amgen, Inc. v. F. Hoffmann-La Roche Ltd., 480 F. Supp. 2d 462, 469 (D. Mass. 2007)("This Court reads these cases as

conferring antitrust standing upon those who sufficiently plead an antitrust injury based upon the prosecution of a fraudulently obtained patent."); Molecular Diagnostics Laboratories v. Hoffmann-La Roche Inc., supra at 281 ("Examining these factors, the court sees no reason to limit standing to competitors," and, "[w]hile entities facing enforcement actions are more likely to rely on Walker Process, this reflects more that they are in a stronger position to detect wrongdoing than a Congressional preference."); Oetiker v. Jurid Werke GmbH, 671 F.2d 596, 599 (D.C. Cir. 1982)("The Supreme Court has established that one guilty of fraudulent procurement and attempted enforcement of the patent thus procured may be liable for treble damages to competitors under the antitrust laws."), citing Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., supra; Hydril Co., L.P. v. Grant Prideco, L.P., 2007 WL 1791663 at *7 (S.D. Tex., June 19, 2007)("Although Plaintiffs are not required to show market-wide injury to competition in order to establish antitrust injury, they are required to allege factually that the alleged misconduct-in this case, the alleged misuse of the '631 Patent, injured Plaintiffs in a market in which they compete."), citing Blue Shield of Virginia v. McCready, supra at 470; In re Netflix Antitrust Litigation, 2007 WL 1725422, at *5 (N.D. Cal., June 14, 2007)("The Ninth Circuit has recognized the rule that only those potential

competitors who are ready to enter the market may have standing to bring Walker Process claims."), citing <u>Bourns, Inc., v. RayChem Corp.</u>, 331 F.3d 704, 711-12 (9th Cir. 2003).

Here, although it is unclear if Anchor, as a mere licensor, is truly in competition with Rockwood, the Counterclaim, itself, alleges that "Anchor has and will continue to purposefully use its '015, '713 and '197 patents to extract royalties from or eliminate **competitors** from the SRW market, thereby increasing its share of the CRW market, decreasing competition and increasing the cost of reasonably suitable SRW products." <u>Counterclaim</u>, at ¶87 [emphasis added].  Since Rockwood has asserted that it has been injured by Anchor's enforcement of its patents which, assertedly, were fraudulently procured, so as to extract royalties, or eliminate competitors, such as Rockwood, we find that Rockwood has asserted a sufficient claim of antitrust injury, since it has pled "enough facts to state a claim to relief that is plausible on its face," <u>Bell Atlantic Corp. v. Twombley</u>, supra at 1974, which, at the threshold of litigation, properly survives a Motion to Dismiss.  Accordingly, we recommend that Anchor's Motion to Dismiss the Antitrust Counterclaim be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

- 22 -

1.     That the Counterclaim Defendants' Motion to Dismiss the Antitrust Counterclaim [Docket No. 11] be denied.

2.     That the Plaintiff's Motion For an Extension of Time, and to Amend the Complaint [Docket No. 25] be denied, as moot.


Dated:  October 5, 2007                    *s/Raymond L. Erickson*
                                           Raymond L. Erickson
                                           CHIEF U.S. MAGISTRATE JUDGE


## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than October 22, 2007,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete

transcript of that Hearing **by no later than October 22, 2007,** unless all interested

parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to

review the transcript in order to resolve all of the objections made.